**KOPELOWITZ OSTROW P.A.**
Kristen Lake Cardoso (SBN 338762)
cardoso@kolawyers.com
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100

*Counsel for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHLOE WRIGHT, *individually and on behalf of all others similarly situated*, | Case No.: _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| SERVICEAIDE, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff, Chloe Wright ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Defendant Serviceaide, Inc. ("Defendant"), based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by counsel as to all other matters:

## SUMMARY OF THE CASE

1. This action arises from Defendant's failure to secure the personally identifiable information ("PII")[1] and protected health information ("PHI")[2] (collectively, "Private Information")

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

[2] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*, and its implementing regulations ("HIPAA"), "protected health information" is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information*. "Business Health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy Rule*, DEP'T FOR HEALTH & HUM. SERVS., https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html.

of Plaintiff and the members of the proposed Class, who are current and former patients of Defendant.

2.    On May 9, 2025- over seven months after the Private Information from the Data Breach was made publicly available, Defendant notified Plaintiff of a data security incident on its system ("Notice Letter"). Following an internal investigation, Defendant learned that from September 19, 2024 to November 15, 2024, at least one of Defendant's clients, Catholic Health System, Inc.'s ("Catholic Health"), current and former patients' highly personal information, including first and last name, date of birth, Social Security Number, email username and password, medical record number, patient account number, medical/health information, health insurance information, prescription/treatment information, clinical information, provider name, and provider location.[3]

3.    Due to intentionally obfuscating language, it is unclear how the Data Breach occurred and how Plaintiff's and the Class's Private Information was "inadvertently made publicly available."[4]

4.    As a result of the Data Breach, which Defendant failed to prevent, the Private Information of its patients, including Plaintiff and the proposed Class Members, was stolen.

5.    Instead, Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to safeguard its current and former patients' Private Information and by failing to take necessary steps to prevent unauthorized disclosure of that information. Defendant's woefully inadequate data security measures made the Data Breach a foreseeable, and even likely, consequence of its negligence.

6.    As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent on initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) lost work time; and

---

[3] Plaintiff's Notice Letter from Defendant, Serviceaide Inc., marked as **Exhibit A.**
[4] *Id.*

(m) anxiety, annoyance, and nuisance; (n) continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

7. Plaintiff and Class Members would not have provided their valuable Private Information had they known that Defendant would make their Private Information Internet-accessible, not encrypt personal and sensitive data elements, and not delete the Private Information it no longer had reason to maintain.

8. Through this lawsuit, Plaintiff seeks to hold Defendant responsible for the injuries it inflicted on Plaintiff and Class Members due to its impermissibly inadequate data security measures, and to seek injunctive relief to ensure the implementation of security measures to protect the Private Information that remains in Defendant's possession.

9. The exposure of one's Private Information to cybercriminals is a bell that cannot be un-rung. Before this Data Breach, Plaintiff's and the Class's Private Information was exactly that—private. Not anymore. Now, their Private Information is forever exposed and unsecure.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, there are more than 100 members in the proposed class. One of the Defendant and Plaintiff are citizens of different states.

11. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and does substantial business in this District.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

13. Plaintiff, Chloe Wright, is, and at all relevant times has been, a resident and citizen of New York, where she intends to remain.

14. Defendant, Serviceaide, Inc., is a Delaware corporation with its headquarters and principal place of business located at 2445 Augustine Drive, Suite 150, Santa Clara, California 95054.

# FACTUAL ALLEGATIONS

**A.  Serviceaide and Catholic Health System, Inc.**

15.    Defendant is a corporation that provides its clients with Agentic AI- powered Agents" to "streamline operations, boost efficiency, and drive innovation." Serviceaide employs "advanced technology" to enable "informed decision-making and exceptional service delivery." [5]

16.    Catholic Health is a Buffalo, New York based non-profit healthcare system that provides care to Western New Yorkers across a network of hospitals, nursing homes, home care agencies, and physician practices.[6]

17.    According to Defendant's Breach Notice[7], Catholic Health is a client of Serviceaide.

18.    Upon information and belief, Defendant provides services to additional entities across the country.[8]

19.    Serviceaide promises to safeguard the Private Information it collects, declaring in its "Customer Privacy Statement" that:

> At Serviceaide, we respect the privacy of our customers, business partners, event attendees, job applicants and Site visitors. We are committed to providing a best-in-class experience, while ensuring the privacy and security of your data. The Company is committed to protecting the privacy of individuals who visit the Site and interact with our Services.... We have implemented administrative, technical, and physical security controls that are designed to safeguard your Personal Information. [9]

**B.  The Data Breach**

20.    Upon information and belief, Plaintiff and Class Members were required to provide Defendant with their sensitive and confidential Private Information. Catholic Health then provided access to

21.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the Private Information it was maintaining for Plaintiff and Class Members, such as encrypting the information or deleting it when it is no longer needed, causing the exposure of Private Information.

---

[5] *See About Us*, SERVICEAIDE, http://www.serviceaideinc/about-us (last visited May 17, 2025).
[6] *See About Us*, CATHOLIC HEALTH, http://www.chsbuffalo.org/ (last visited May 17, 2025).
[7] *See* Plaintiff's Notice Letter from Defendant, Serviceaide Inc., attached hereto as ***Exhibit A.***
[8] *See* http://www.serviceaide.com/resources/success-stories (last visited May 17, 2025).
[9] *See* http://www.serviceaide.com/customer-privacy-statement (last visited May 17, 2025).

22.    As evidenced by the Data Breach, the Private Information contained in Defendant's network and was not encrypted. Had the information been properly encrypted, the data thieves would have exfiltrated only unintelligible data.

23.    The Notice Letter posted on Defendant's website states:

**What Happened?**
On November 15, 2024, Serviceaide learned that certain information within its Catholic Health Elasticsearch database was inadvertently made publicly available. In response, we promptly took steps to secure Catholic Health's Elasticsearch database and initiated an investigation into the nature and scope of the event. The investigation determined that between September 19, 2024 and November 5, 2024, certain patient information was publicly available.

**What Information Was Involved?**
While we have no indication of identity theft or fraud in relation to this incident, the review determined the universe of potential information present in the impacted data may include name, Social Security number, date of birth, medical record number, patient account number, medical/health information, health insurance information, prescription/treatment information, clinical information, provider name, provider location, and email/username and password. The specific type of information at issue varies per individual.[10]

24.    Appallingly, Defendant did not notify Data Breach victims of the publication of their Private Information until on or around May 9, 2025—*seven months* after the breach was discovered.

**C.  The Value of Private Information**

25.    In April 2020, ZDNet reported in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year", that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for complaints as revenge against those who refuse to pay."[11]

26.    In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of

---

[10] *See* http://www.serviceaide.com/notices (last visited May 17, 2025).
[11] https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year.

1    extortion."[12]

2        27.    Stolen Private Information is often trafficked on the dark web, as is the case here. Law

3    enforcement has difficulty policing the dark web due to this encryption, which allows users and

4    criminals to conceal identities and online activity.

5        28.    When malicious actors infiltrate companies and copy and exfiltrate the Private

6    Information that those companies store, that stolen information often ends up on the dark web because

7    the malicious actors buy and sell that information for profit.[13]

8        29.    Another example is when the U.S. Department of Justice announced its seizure of

9    AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or

10   fraudulent documents that could be used to assume another person's identity. Other marketplaces,

11   similar to the now-defunct AlphaBay, "are awash with [Private Information] belonging to victims from

12   countries all over the world. One of the key challenges of protecting Private Information online is its

13   pervasiveness. As data breaches in the news continue to show, Private Information about employees,

14   patients and the public is housed in all kinds of organizations, and the increasing digital transformation

15   of today's businesses only broadens the number of potential sources for hackers to target."[14]

16       30.    The Private Information of consumers remains of high value to criminals, as evidenced

17   by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen

18   identity credentials. For example, Private Information can be sold at a price ranging from $40 to $200,

19   and bank details have a price range of $50 to $2009.[15] Experian reports that a stolen credit or debit

20   card number can sell for $5 to $110 on the dark web.[16] Criminals can also purchase access to entire

21   company data breaches.[17]

---

[12] *See* https://www.cisa.gov/sites/default/files/2023-01-CISA_MSISAC_Ransomware%20Guide_8508C.pdf.

[13] *Shining a Light on the Dark Web with Identity Monitoring, IdentityForce*, Dec. 28, 2020, https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring.

[14] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor, April 3, 2018, https://www.armor.com/resources/blog/stolen-pii- ramifications- identity-theft-fraud-dark-web/.

[15] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal- data-sold-on-the-dark-web- how-much-it-costs/.

[16] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[17] *In the Dark*, VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous- browsing/in-the-dark/.

31.     Once Private Information is sold, it is often used to gain access to various areas of the victim's digital life, including bank accounts, social media, credit card, and tax details. This can lead to additional Private Information being harvested from the victim, as well as Private Information from family, friends and colleagues of the original victim.

32.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.

33.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

34.     Data breaches facilitate identity theft as hackers obtain consumers' Private Information and thereafter use it to siphon money from current accounts, open new accounts in the names of their victims, or sell consumers' Private Information to others who do the same.

35.     For example, the United States Government Accountability Office noted in a June 2007 report on data breaches (the "GAO Report") that criminals use Private Information to open financial accounts, receive government benefits, and make purchases and secure credit in a victim's name.[18] The GAO Report further notes that this type of identity fraud is the most harmful because it may take some time for a victim to become aware of the fraud, and can adversely impact the victim's credit rating in the meantime. The GAO Report also states that identity theft victims will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."[19]

36.     The market for Private Information has continued unabated to the present, and in 2023 the number of reported data breaches in the United States increased by 78% over 2022, reaching 3205 data breaches.[20]

37.     The exposure of Plaintiff's and Class Members' Private Information to cybercriminals

---

[18] *See* Government Accountability Office, *Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (June 2007), https://www.gao.gov/assets/gao- 07-737.pdf.

[19] *Id*.

[20] Beth Maundrill, *Data Privacy Week: US Data Breaches Surge, 2023 Sees 78% Increase in Compromises*, INFOSECURITY MAGAZINE (Jan. 23, 2024); https://www.infosecurity-magazine.com/news/us-data-breaches-surge-2023/; *see also* Identity Theft Resource Center, *2023 Data Breach Report*, https://www.idtheftcenter.org/publication/ 2023-data-breach-report/.

will continue to cause substantial risk of future harm (including identity theft) that is continuing and imminent in light of the many different avenues of fraud and identity theft utilized by third-party cybercriminals to profit off of this highly Private Information.

**D. Defendant Failed to Comply with Regulatory Requirements and Standards.**

38.    Federal and state regulators have established security standards and issued recommendations to temper data breaches and the resulting harm to consumers and employees. There are a number of state and federal laws, requirements, and industry standards governing the protection of Private Information.

39.    For example, at least 24 states have enacted laws addressing data security practices that require businesses that own, license, or maintain Private Information about a resident of that state to implement and maintain "reasonable security procedures and practices" and to protect Private Information from unauthorized access.

40.    Additionally, cybersecurity firms have promulgated a series of best practices that at a minimum should be implemented by sector participants including, but not limited to: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting of physical security systems; protecting against any possible communication system; and training staff regarding critical points.[21]

41.    The FTC has issued several guides for businesses, highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be considered for all business decision-making.[22]

42.    Under the FTC's 2016 *Protecting Personal Information: Guide for Business* publication, the FTC notes that businesses should safeguard the personal customer information they retain; properly dispose of unnecessary personal information; encrypt information stored on computer

---

[21] *See Addressing BPO Information Security: A Three-Front Approach*, DATAMARK, INC. (Nov. 2016), https://insights.datamark.net/addressing-bpo-information-security.
[22]    *Start With Security*, Fed. Trade Comm'n ("FTC"), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

networks; understand their network's vulnerabilities; and implement policies to rectify security issues.[23]

43.    The guidelines also suggest that businesses use an intrusion detection system to expose a breach as soon as it happens, monitor all incoming traffic for activity indicating someone is trying to hack the system, watch for large amounts of data being siphoned from the system, and have a response plan in the event of a breach.

44.    The FTC advises companies to not keep information for periods of time longer than needed to authorize a transaction, restrict access to private information, mandate complex passwords to be used on networks, utilize industry-standard methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.[24]

45.    The FTC has brought enforcement actions against companies for failing to adequately and reasonably protect consumer data, treating the failure to do so as an unfair act or practice barred by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders originating from these actions further elucidate the measures businesses must take to satisfy their data security obligations.

46.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

47.    Defendant's failure to verify that it had implemented reasonable security measures constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

48.    Furthermore, Defendant is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. The Privacy Rule and the Security Rule set nationwide standards for protecting health information, including health information

---

[23] *Protecting Personal Information: A Guide for Business*, FTC, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.
[24] *Id.*

1    stored electronically.

2    49.    The Security Rule requires Defendant to do the following:

3    a.    Ensure the confidentiality, integrity, and availability of all electronic protected health

4    information the covered entity or business associate creates, receives, maintains, or

5    transmits;

6    b.    Protect against any reasonably anticipated threats or hazards to the security or integrity

7    of such information;

8    c.    Protect against any reasonably anticipated uses or disclosures of such information that

9    are not permitted; and

10    d.    Ensure compliance by its workforce.[25]

11    50.    Pursuant to HIPAA's mandate that Defendant follows "applicable standards,

12    implementation specifications, and requirements . . . with respect to electronic protected health

13    information," 45 C.F.R. § 164.302, Defendant was required to, at minimum, "review and modify the

14    security measures implemented . . . as needed to continue provision of reasonable and appropriate

15    protection of electronic protected health information," 45 C.F.R. § 164.306(e), and "[i]mplement

16    technical policies and procedures for electronic information systems that maintain electronic protected

17    health information to allow access only to those persons or software programs that have been granted

18    access rights." 45 C.F.R. § 164.312(a)(1).

19    51.    Defendant is also required to follow the regulations for safeguarding electronic medical

20    information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. § 17921,

21    45 C.F.R. § 160.103.

22    52.    Both HIPAA and HITECH obligate Defendant to follow reasonable security standards,

23    respond to, contain, and mitigate security violations, and to protect against disclosure of sensitive

24    patient Private Information. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); 45 C.F.R. §

25    164.530(f); 42 U.S.C. § 17902.

26    53.    As alleged in this Complaint, Defendant has failed to comply with HIPAA and

27    HITECH. It has failed to maintain adequate security practices, systems, and protocols to prevent data

28    [25] *Summary of the HIPAA Security Rule*, HHS, https://www.hhs.gov/hipaa/for-professionals/security/laws-regulations/index.html.

10

loss, failed to mitigate the risks of a data breach and loss of data, and failed to ensure the confidentiality and protection of PHI.

### E. Defendant Failed to Comply with Industry Practices.

54.    Various cybersecurity industry best practices have been published and should be consulted as a go-to resource when developing an organization's cybersecurity standards. The Center for Internet Security ("CIS") promulgated its Critical Security Controls, which identify the most commonplace and essential cyber-attacks that affect businesses every day and proposes solutions to defend against those cyber-attacks.[26] All organizations collecting and handling Private Information, such as Defendant, are strongly encouraged to follow these controls.

55.    Further, the CIS Benchmarks are the overwhelming option of choice for auditors worldwide when advising organizations on the adoption of a secure build standard for any governance and security initiative, including PCI DSS, NIST 800-53, SOX, FISMA, ISO/IEC 27002, Graham Leach Bliley and ITIL.[27]

56.    Several best practices have been identified that a minimum should be implemented by data management companies like Defendant, including but not limited to securely configuring business software, managing access controls and vulnerabilities to networks, systems, and software, maintaining network infrastructure, defending networks, adopting data encryption while data is both in transit and at rest, and securing application software.[28]

57.    Defendant failed to follow these and other industry standards to adequately protect the Private Information of Plaintiff and Class Members.

### F. The Data Breach Caused Injury to Class Members and Will Result in Additional Harm Such as Fraud.

58.    Without detailed disclosure to the victims of the Data Breach, individuals whose Private Information was compromised by the Data Breach, including Plaintiff and Class Members,

---

[26] Center for Internet Security, *Critical Security Controls*, at 1 (May 2021), https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf.
[27] *See CIS Benchmarks FAQ*, Center for Internet Security, https://www.cisecurity.org/cis-benchmarks/cis-benchmarks-faq/.
[28] *See* Center for Internet Security, *Critical Security Controls* (May 2021), https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf.

were unknowingly and unwittingly exposed to continued misuse and ongoing risk of misuse of their Private Information for months without being able to take available precautions to prevent imminent harm.

59.     The ramifications of Defendant's failure to secure Plaintiff's and Class Members' data are severe.

60.     Victims of data breaches are much more likely to become victims of identity theft and other types of fraudulent schemes. This conclusion is based on an analysis of four years of data that correlated each year's data breach victims with those who also reported being victims of identity fraud.

61.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[29] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[30]

62.     Identity thieves can use Private Information, such as that of Plaintiff and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

63.     As demonstrated herein, these and other instances of fraudulent misuse of the compromised Private Information has already occurred and are likely to continue.

64.     As a result of Defendant's delay between the Data Breach in April 2025 and the notice of the Data Breach sent to affected persons in May 2025, the risk of fraud for Plaintiff and Class Members increased exponentially.

65.     Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of

---

[29] 17 C.F.R. § 248.201 (2013).
[30] *Id.*

Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[31]

66.    The 2017 Identity Theft Resource Center survey[32] evidences the emotional suffering experienced by victims of identity theft:

- 75% of respondents reported feeling severely distressed;

- 67% reported anxiety;

- 66% reported feelings of fear related to personal financial safety;

- 37% reported fearing for the financial safety of family members;

- 24% reported fear for their physical safety;

- 15.2% reported a relationship ended or was severely and negatively impacted by identity theft; and

- 7% reported feeling suicidal.

67.    Identity theft can also exact a physical toll on its victims. The same survey reported that respondents experienced physical symptoms stemming from their experience with identity theft:

- 48.3% of respondents reported sleep disturbances;

- 37.1% reported an inability to concentrate / lack of focus;

- 28.7% reported they were unable to go to work because of physical symptoms;

- 23.1% reported new physical illnesses (aches and pains, heart palpitations, sweating, stomach issues); and

- 12.6% reported a start or relapse into unhealthy or addictive behaviors.[33]

68.    There may be a time lag between when harm occurs versus when it is discovered, and also between when private information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue

---

[31] *Victims of Identity Theft*, Bureau of Justice Statistics (Sept. 2015) http://www.bjs.gov/content/pub/pdf/vit14.pdf.
[32] *Id.*
[33] *Id.*

1   for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[34]

2   Thus, Plaintiff and Class Members now face years of constant surveillance of their financial and

3   personal records, monitoring, and loss of rights.

4   **G. Plaintiff and Class Members Suffered Damages.**

5       69.    As a direct and proximate result of Defendant's wrongful actions and inaction and the

6   resulting Data Breach, Plaintiff and Class Members have already been harmed by the fraudulent

7   misuse of their Private Information, and have been placed at an imminent, immediate, and continuing

8   increased risk of additional harm from identity theft and identity fraud, requiring them to take the time

9   which they otherwise would have dedicated to other life demands such as work and family in an effort

10  to mitigate both the actual and potential impact of the Data Breach on their lives. Such mitigatory

11  actions include, *inter alia*, placing "freezes" and "alerts" with credit reporting agencies, contacting

12  their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring

13  their credit reports and accounts for unauthorized activity, sorting through dozens of phishing and

14  spam email, text, and phone communications, and filing police reports. This time has been lost forever

15  and cannot be recaptured.

16      70.    Defendant's wrongful actions and inaction directly and proximately caused the theft

17  and dissemination into the public domain of Plaintiff's and Class Members' Private Information,

18  causing them to suffer, and continue to suffer, economic damages and other actual harm for which

19  they are entitled to compensation, including:

20          a.  theft and misuse of their personal and financial information;

21          b.  the imminent and certainly impending injury flowing from potential fraud and identity

22              theft posed by their Private Information being placed in the hands of criminals and

23              misused via the sale of Plaintiff's and Class Members' information on the Internet's

24              black market;

25          c.  the untimely and inadequate notification of the Data Breach;

26          d.  the improper disclosure of their Private Information;

27          e.  loss of privacy;

28  [34]    GAO, *Report to Congressional Requesters*, at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf.

     f.   ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

     g.   ascertainable losses in the form of deprivation of the value of their Private Information, for which there is a well-established national and international market;

     h.   the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data Breach; and

     i.   nominal damages.

71.    While Plaintiff's and Class Members' Private Information has been stolen, Defendant continues to hold Plaintiff's and Class Members' Private Information. Particularly because Defendant has demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiff and Class Members have an undeniable interest in ensuring that their Private Information is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

**H. Plaintiff's Experience.**

72.    Plaintiff is a former patient and employee of Catholic Health.

73.    Upon information and belief, Plaintiff provided Private Information to Defendant on the condition that it be maintained as confidential and with the understanding that Defendant would employ reasonable safeguards to protect her Private Information.

74.    Since the Data Breach, Plaintiff has experienced anxiety and increased concerns for the loss of her privacy, as well as anxiety over the impact of cybercriminals accessing and using her Private Information.

75.    Moreover, since the Data Breach Plaintiff has experienced a spike in spam calls and texts using her PII compromised in the Data Breach, causing additional inconvenience.

76.    Plaintiff would not have entrusted her Private Information to Defendant had she known it would not take reasonable steps to safeguard her information.

77. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

78. Plaintiff is very careful about sharing sensitive Private Information. She stores documents containing Private Information in safe and secure locations and has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source. Plaintiff would not have entrusted her Private Information to Defendant had she known of Defendant's lax data security policies.

79. As a direct and proximate result of the Data Breach, Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring her financial accounts.

80. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and faces a present and continuing risk of fraud and identity theft for her lifetime.

## **CLASS ALLEGATIONS**

81. Plaintiff brings this class action individually and, pursuant to Federal Rule of Civil Procedure Rule 23, on behalf of:

> All United States citizens whose Private Information was compromised in the Data Breach discovered by Defendant in June 2024, including all those who received notice of the breach.

82. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendant has a controlling interest, as well as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).z

83. Plaintiff reserves the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

84. <u>Numerosity</u>: The members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. The precise number of individuals affected is believed to be several thousands of individuals.

85.    <u>Commonality and Predominance:</u> Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include, *inter alia*:

a.    Whether Defendant engaged in the conduct alleged herein;

b.    Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' Private Information from unauthorized access and disclosure;

c.    Whether Defendant's computer systems and data security practices used to protect Plaintiff's and Class Members' Private Information violated federal and/or state laws, and/or Defendant's other duties discussed herein;

d.    Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and Class Members;

e.    Whether Defendant unlawfully shared, lost, or disclosed Plaintiff's and Class Members' Private Information;

f.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g.    Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

h.    Whether Plaintiff and Class Members suffered injury as a proximate result of Defendant's negligent actions or failures to act;

i.    Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class Members' Private Information;

j.    Whether Defendant breached duties to protect Plaintiff's and Class Members' Private Information;

k.    Whether Defendant's actions and inactions alleged herein were negligent;

l.    Whether Defendant were unjustly enriched by their conduct as alleged herein;

m. Whether an implied contract existed between Defendant and Plaintiff with respect to protecting Private Information and privacy, and whether that contract was breached;

n. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages or other relief, and the measure of such damages and relief;

o. Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

p. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

86. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of herself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

87. <u>Typicality:</u> Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had her Private Information compromised in the Data Breach. Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

88. <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the Class and has no interests adverse to, or conflict with, the Class she seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

89. <u>Superiority:</u> A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class

Members to individually seek redress from Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

90.    Injunctive and Declaratory Relief: Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

91.    All members of the proposed Class are readily ascertainable. Defendant has access to the names in combination with addresses and/or e-mail addresses of Class Members affected by the Data Breach. Indeed, impacted Class Members already have been preliminarily identified and sent a breach notice letter.

**CAUSES OF ACTION**

**COUNT I**

**NEGLIGENCE**

**(On Behalf of Plaintiff and the Class Against Defendant)**

92.    Plaintiff restates and realleges paragraphs 1 through 91 above as if fully set forth herein.

93.    Plaintiff and members of the Class entrusted their Private Information to Defendant. Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the Private Information in their care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts to unauthorized access.

94.    Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their Private Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Private Information- just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's Private

Information by disclosing and providing access to this information to unauthorized third parties by and failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

95.    Defendant owed to Plaintiff and the members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Private Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

96.    Defendant owed these duties to Plaintiff and embers of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's Private Information.

97.    The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant hold vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information —whether by malware or otherwise

98.    Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

99.    Defendant breached their duties by failing to exercise reasonable care in supervising their employees, agents, contractors, vendors, and suppliers, and in handling and securing the Private Information of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendant further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent

supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

100.     Defendant's breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**

**NEGLIGENCE PER SE**

**(On Behalf of Plaintiff and the Class Against Defendant)**

101.     Plaintiff restates and realleges paragraphs 1 through 100 above as if fully set forth herein.

102.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Private Information.

103.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, Private Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's Private Information.

104.     Defendant breached their duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

105.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers' patients, clients and employees,

21

which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

106.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

107.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant are bound by industry standards to protect confidential Private Information.

108.    Defendant violated their under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

109.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

110.    Defendant violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

111.    But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

112.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that they were failing to meet their duties and that their breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Private Information.

113.    Had Plaintiff and the Class known that Defendant did not adequately protect their Private Information, Plaintiff and members of the Class would not have entrusted Defendant with their Private Information.

114.    Defendant's various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

115.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Private Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Private Information, entitling them to damages in an amount to be proven at trial.

116.    Additionally, as a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect their Private Information in their continued possession.

### COUNT III

### BREACH OF IMPLIED CONTRACT

### (On Behalf of Plaintiff and the Class Against Defendant)

117.    Plaintiff restates and realleges paragraphs 1 through 100 above as if fully set forth herein.

118.   Plaintiff and Class Members were required deliver their Private Information to Defendant to obtain dental services from Defendant. Plaintiff and Class Members paid for dental services and provided their Private Information to Defendant with the assumption that a portion of Defendant's earnings would be used to adequately safeguard their Private Information and would not have done so had they known that Defendant's data security practices were substandard.

119.   Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

120.   Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of performing its regular business operations.

121.   Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

122.   In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

123.   Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

124.   The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

125.    On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

126.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

127.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

128.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

129.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

130.    Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

131.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

132.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

133.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued

1  acceptance of Private Information and storage of other personal information after Defendant knew, or

2  should have known, of the security vulnerabilities of the systems that were exploited in the Data

3  Breach.

4      134.    As a direct and proximate result of Defendant's breach of the implied contracts,

5  Plaintiff and Class Members sustained damages, including, but not limited to: (i) invasion of privacy;

6  (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost

7  time and opportunity costs associated with attempting to mitigate the actual consequences of the Data

8  Breach; (v) loss of benefit of the bargain; (vi) actual misuse of the compromised data consisting of an

9  increase in spam calls, texts, and/or emails; (vii) nominal damages; and (viii) the continued and

10  certainly increased risk to their Private Information, which: (a) remains unencrypted and available for

11  unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession

12  and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate

13  and adequate measures to protect the Private Information.

14      135.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal

15  damages suffered as a result of the Data Breach.

16      136.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant

17  to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual

18  audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit

19  monitoring to all Class Members.

20                          **COUNT IV**

21                       **UNJUST ENRICHMENT**

22          **(On Behalf of Plaintiff and the Class Against Defendant)**

23      137.    Plaintiff restates and realleges paragraphs 1 through 100 above as if fully set forth

24  herein.

25      138.    This count is brought in the alternative to Plaintiff's breach of implied contract claim.

26      139.    Plaintiff and Class Members conferred a benefit on Defendant in providing Private

27  Information to Defendant.

28

140.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Class. Defendant also benefited from the receipt of Plaintiff's and the Class's Private Information, as this was used to facilitate the treatment, services, and goods they sold to Plaintiff and the Class.

141.    Defendant failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members, and as a result Defendant was overpaid.

142.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money because Defendant failed to provide adequate safeguards and security measures to protect Plaintiff and Class Members' Private Information that they paid for but did not receive.

143.    Defendant wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class Members.

144.    Defendant's enrichment at the expense of Plaintiff and Class Members is and was unjust.

145.    As a result of Defendant's wrongful conduct, as alleged above, Plaintiff and the Class are entitled to restitution and disgorgement of profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

## COUNT V

### INVASION OF PRIVACY

#### (On Behalf of Plaintiff and the Class)

146.    Plaintiff restates and realleges paragraphs 1 through 100 above as if fully set forth herein.

147.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

148.    Defendant owed a duty, including Plaintiff and the Class, to keep this information confidential.

149.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' Private Information is highly offensive to a reasonable person.

150.     The intrusion was into a place or thing which was private and entitled to be private.

151.     Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

152.     The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

153.     Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

154.     Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

155.     Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

156.     As a proximate result of Defendant's acts and omissions, the private Private Information of Plaintiff and the Class were made available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed supra).

157.     And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

158.     Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Private Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

159.     Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII/PHI of Plaintiff and the Class.

160.     In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class Members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the

1  value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history

2  for identity theft and fraud, plus prejudgment interest and costs.

3  ## COUNT VI

4  ### Violation of California Unfair Competition Law (UCL)

5  ### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

6  ### (On Behalf of Plaintiff and the Class)

7  161.    Plaintiff restates and realleges paragraphs 1 through 100 above as if fully set forth

8  herein.

9  162.    Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus.

10  & Prof. Code § 17200, et seq. which prohibits unlawful, unfair, or fraudulent business acts or practices

11  ("UCL").

12  163.    Defendant's conduct is unlawful because it violates the California Consumer Privacy

13  Act of 2018, Civ. Code § 1798.100, et seq. (the "CCPA"), the California Customer Records Act, Cal.

14  Civ. Code § 1798.80, et seq. (the "CRA"), and other state data security laws.

15  164.    Defendant stored the Private Information of Plaintiff and the Class in its computer

16  systems and knew or should have known it did not employ reasonable, industry standard, and

17  appropriate security measures that complied with applicable regulations and that would have kept

18  Plaintiff's and the Class's Private Information secure to prevent the loss or misuse of that Private

19  Information.

20  165.    Defendant failed to disclose to Plaintiff and the Class that their Private Information was

21  not secure. However, Plaintiff and the Class were entitled to assume, and did assume, that Defendant

22  had secured their Private Information. At no time were Plaintiff and the Class on notice that their

23  Private Information was not secure, which Defendant had a duty to disclose.

24  166.    Defendant also violated California Civil Code § 1798.150 by failing to implement and

25  maintain reasonable security procedures and practices, resulting in an unauthorized access and

26  exfiltration, theft, or disclosure of Plaintiff's and the Class's nonencrypted and nonredacted PII/PHI.

27  167.    Had Defendant complied with these requirements, Plaintiff and the Class would not

28  have suffered the damages related to the data breach.

168.    Defendant's conduct was unlawful, in that it violated the CCPA.

169.    Defendant's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, inter alia, Section 5(a) of the Federal Trade Commission Act.

170.    Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

171.    Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting Private Information.

172.    Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. See, e.g., Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

173.    Instead, Defendant made the Private Information of Plaintiff and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff and the Class to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

174.    As a result of those unlawful and unfair business practices, Plaintiff and the Class suffered an injury-in-fact and have lost money or property.

175.    For one, on information and belief, Plaintiff's and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the dark web.

176.    The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

177.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

178.    Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

**COUNT VII**

**Declaratory Judgment**

**(On Behalf of Plaintiff and the Class)**

179.    Plaintiff restates and realleges paragraphs 1 through 100 above as if fully set forth herein.

180.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

181.    In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and still are—inadequate and unreasonable. And Plaintiff and Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

182.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to them;

    b.    Defendant have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

1        c.   Defendant breached, and continues to breach, their duties by failing to use reasonable

2               measures to the data entrusted to it; and

3        d.   Defendant's breach of their duties caused—and continues to cause—injuries to

4               Plaintiff and Class Members.

5        183.   The Court should also issue corresponding injunctive relief requiring Defendant to use

6 adequate security consistent with industry standards to protect the data entrusted to it.

7        184.   If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and

8 lack an adequate legal remedy if Defendant experiences a second data breach.

9        185.   And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at

10 law because many of the resulting injuries are not readily quantified in full and they will be forced to

11 bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted

12 for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full

13 extent of Plaintiff and Class Members' injuries.

14      186.   If an injunction is not issued, the resulting hardship to Plaintiff and Class Members far

15 exceeds the minimal hardship that Defendant could experience if an injunction is issued.

16      187.   An injunction would benefit the public by preventing another data breach—thus

17 preventing further injuries to Plaintiff, Class Members, and the public at large.

18                                                   **PRAYER FOR RELIEF**

19       Plaintiff, individually and on behalf of all other members of the class, respectfully requests

20 that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

21      A.   Certifying the Class as requested herein, designating Plaintiff as Class representatives,

22 and appointing Plaintiff's counsel as Class Counsel;

23      B.   Awarding Plaintiff and the Class appropriate monetary relief, including actual

24 damages, statutory damages, punitive damages, restitution, nominal damages and disgorgement;

25      C.   Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may

26 be appropriate. Plaintiff, on behalf of herself and the class, seek appropriate injunctive relief designed

27 to prevent Defendant from experiencing another data breach by adopting and implementing best data

28

1  security practices to safeguard Private Information and to provide or extend credit monitoring services

2  and similar services to protect against all types of identity theft;

3        D.        Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the

4  maximum extent allowable;

5        E.        Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as

6  allowable; and

7        F.        Awarding Plaintiff and the Class such other favorable relief as allowable under law.

8                                  **<u>JURY TRIAL DEMAND</u>**

9        Plaintiff demands a trial by jury of all claims herein so triable.

10  Dated: May 18, 2025.                          Respectfully submitted,

11                                          <u>*/s/ Kristen Lake Cardoso*</u>
                                            Kristen Lake Cardoso (CA Bar No. 338762)
12                                          **KOPELOWITZ OSTROW P.A.**
                                            One West Law Olas Blvd., Suite 500
13                                          Fort Lauderdale, Florida 33301
                                            Tel: (954) 525-4100
14                                          E: cardoso@kolawyers.com

15                                          *Counsel for Plaintiff and the Putative Class*

16

17

18

19

20

21

22

23

24

25

26

27

28